

**RETURN TO
FARR REAL ESTATE**

```
INSTR # 6822043
OR BK 04734 Pgs 4391 - 4403; (13pgs)
RECORDED 06/02/2005 10:09:34 AM
CHARLIE GREEN, CLERK OF COURT
LEE COUNTY, FLORIDA
RECORDING FEE 112.00
MTG DOC 4,025.00
INTANGIBLE 2,300.00
DEPUTY CLERK P Haywood
```

This Instrument Prepared By:
Gordon R. Duncan, Esquire
DUNCAN & TARDIF, P.A.
Post Office Box 249
Fort Myers, FL 33902

## MORTGAGE

THIS INDENTURE, made this 27 day of May, 2005, by and between **JAMES G. MARQUEZ and MARIELLA MARQUEZ, HUSBAND AND WIFE**, whose address is **26 Barton Lane, Cos Cob, Ct. 06807** hereinafter referred to as "Mortgagor", and **BUSEY BANK FLORIDA**, whose address is **7980 Summerlin Lakes Dr., Fort Myers, FL. 33907**, hereinafter referred to as "Mortgagee".

### WITNESSETH:

WHEREAS, the Mortgagor has become indebted to the Mortgagee in the sum of **ONE MILLION ONE HUNDRED FIFTY THOUSAND and NO/100 DOLLARS ($1,150,000.00)**, for which amount the Mortgagor has signed and delivered unto the Mortgagee a certain Note, bearing even date with these presents, the terms of which are payable at the office of the Mortgagee in Lee County, Florida, or at such other place as the holder thereof may designate, in the manner described in the Note. Said Note is by reference hereto being made a part hereof, the same as though the entire Note had been set out herein.

WHEREAS, the Mortgagor is desirous of securing the prompt payment of such Note and the several installments of principal, interest and the monthly payments therein provided for, and any additional indebtedness accruing to the Mortgagee on account of any future payments, advances, or expenditures made by the Mortgagee as hereinafter provided.

1. GRANT OF MORTGAGE. The Mortgagor, for the purpose of securing the prompt payment of the indebtedness as it becomes due, and also for and in consideration of the sum of TEN DOLLARS to it in hand paid by Mortgagee, the receipt hereof is hereby acknowledged, has granted, bargained, sold, aliened, released, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, release, convey and confirm unto the Mortgagee forever all that tract or parcel of land situate, lying and being in the County of Lee, in the State of Florida, described as follows, to-wit:

See Exhibit A attached hereto

Together with all and singular the fixtures, tenements, hereditaments and appurtenances thereunto belonging (now existing or hereafter acquired) or in any wise appertaining and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever as well as in law as in equity, of the Mortgagor, of, in, and to the same, and every part and parcel thereof with the appurtenances. To have and to hold the herein granted and described premises with the appurtenances unto the Mortgagee, to its own proper use, benefit, and behoof forever; and the Mortgagor does covenant with the Mortgagee that he is seized of an indefeasible estate in fee simple in such premises and will warrant and forever defend the title thereof unto the Mortgagee, against all lawful claims whatever.

2. PAYMENT OF NOTE. These presents are upon the express condition that if the Mortgagor shall pay unto the Mortgagee the indebtedness according to the terms of the note hereinabove referred to, without deduction or credit for taxes, then these presents and the estate hereby granted shall cease, terminate and be void.

3. COVENANTS OF MORTGAGOR. The Mortgagor, in order to more fully protect the security of this mortgage, does hereby covenant and agree as follows:

A. To pay all water and sewer rates and other governmental or municipal charges, fines, taxes, assessments, obligations and encumbrances of every nature, or impositions levied upon such premises or upon the interest of the Mortgagee in and to such premises for which provision has not been made heretofore, and will deliver proper receipts therefore to the Mortgagee; and in default thereof, the Mortgagee may pay the same without waiving or affecting the option to foreclose or any other right hereunder, and all such payments shall bear interest from the date thereof at the highest lawful rate then allowed by the laws of the State of Florida. Any payments so made by the Mortgagee shall be a lien on the mortgaged property, and shall be added to the amount of the indebtedness secured by these presents.

B. Not to claim or demand or be entitled to receive any credit or credits on the principal indebtedness to secure payment of which this mortgage is made, or on the interest payable thereon, for so much of the taxes assessed against such lands as is equal to the tax rate applied to the principal indebtedness due on this mortgage or any part thereof, and that no deduction shall be claimed from the taxable value of such lands and premises by reason of this mortgage; and that during the continuance of this mortgage, the Mortgagor shall keep all the buildings subject to this mortgage in good and substantial repair, and that if the Mortgagor shall neglect to do so, the Mortgagee may, at its option, enter upon the premises from time to time in order to repair, and keep in repair, such premises, without thereby becoming liable to Mortgagor, or any person holding under it in possession, and that the Mortgagee's expense of so repairing or keeping in repair shall be a lien on the mortgaged premises, added to the amount of the indebtedness secured by these presents.

C. To keep the improvements, now existing or hereafter erected on the mortgaged property, insured as may be required from time to time by the Mortgagee against loss by fire and other hazards, casualties, and contingencies, including flood insurance, in such

amounts and for such periods as may be required by the Mortgagee, and will promptly, when due, pay any premiums on such insurance. All insurance policies shall be with companies with a <u>Best's Insurance Report</u> policyholder's rating of A to A+ or better and a financial size category of Class X to XV or better and shall include a standard mortgagee clause (without contribution) in favor of and acceptable to Mortgagee. The policy(ies) shall provide:

    i.    All Risk (Special Form) including fire and extended hazard coverage (or builders risk), vandalism and malicious mischief coverage and interest expense in an amount of not less than the Note balance. If the policy(ies) is written on a co-insurance basis, the policy must contain an agreed amount endorsement as evidence that the coverage is in an amount sufficient to insure the full amount of the Note.

    ii.    Public liability coverage in the lesser amount of the Note balance or $1,000,000.00, with Mortgagee as an additional insured.

    iii.    Flood insurance in the amount of the Note if any building on the property or any part thereof is located in a federally identified flood hazard area.

The initial policy(ies) shall be prepaid and delivered to Mortgagee upon execution of this Mortgage and a copy of all renewal policies shall be delivered to Mortgagee. In the event of loss, the Mortgagor will give immediate notice by mail to the Mortgagee, and Mortgagee may make proof of loss if not made promptly by the Mortgagor, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the Mortgagee instead of to the Mortgagor and Mortgagee jointly, and the insurance proceeds, or any part thereof, may be applied by the Mortgagee at its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. In the event of foreclosure of this mortgage or other transfer of title to the mortgaged property in extinguishment of the indebtedness secured hereby, all rights, title and interest of the Mortgagor in and to any insurance policies then in force shall pass to the purchaser or grantee. Any premium not paid by the Mortgagor may be paid by the Mortgagee, and the amount so paid shall be a lien on the mortgage property and shall be added to the indebtedness hereby secured.

    D.    That in the event the premises or any part thereof shall be taken or condemned for public or quasi-public purposes by the proper authorities, the Mortgagor shall have no claim against the award for damages, or be entitled to any portion of the award until the within mortgage shall be paid and all rights to damages of the Mortgagor are hereby assigned to the Mortgagee to the extent of any indebtedness that remains unpaid, the Mortgagor, however, having the right to appeal such award to the courts of competent jurisdiction.

    E.    That failure at any one or more times of the Mortgagee to assert its rights shall at no time be deemed a waiver of the Mortgagee's rights hereunder.

    F.    That upon the occurrence of any of the following events:(i) default by the mortgagor of any covenant herein contained;

(ii) upon default by the mortgagor in the payment of interest or any installment of principal or of any part thereof; (iii) upon default of any installment for taxes, assessments, water and sewer rates, or other municipal or governmental rates, charges, impositions or liens, or other payments to be made by the mortgagor hereunder; (iv) in the event the mortgagor shall fail to comply with the laws, rules, regulations and ordinances made or promulgated by lawful authority which are now or may hereafter become applicable to the mortgaged premises; (v) if any building, structure, or other improvement on the premises shall be removed or demolished by mortgagor or his agents, or servants, without the written consent of the mortgagee, then in any of these cases, the principal indebtedness or so much thereof as may remain unpaid with all arrearages of interest charges and all advancements at the option of the Mortgagee shall become and be due immediately.

G. Mortgagor will furnish detailed financial statements to Mortgagee as set forth in the loan agreement. Failure to furnish accurate and complete financial statements to Mortgagee as required by the loan agreement is a violation of the covenants of this mortgage and shall allow Mortgagee to immediately accelerate the note or notes secured hereby in the same manner as in the case of nonpayment according to the terms of the note or notes, all at the option of Mortgagee.

4. PRIOR LIENS. Mortgagor shall keep the premises free from all prior liens and upon demand of Mortgagee, pay and procure release of any lien which in any way may impair the security of this mortgage.

5. LATE PAYMENTS, OPTION TO CHARGE HIGHER INTEREST. In the event any payment of principal hereunder is made more than ten (10) days after the date called for in the note or notes secured hereby, the Mortgagee, at its option, may charge and collect interest for the installment period at the rate of 18% per annum or the maximum annual rate allowed by law. Any failure to pay the amount of increased interest within twenty (20) days after written demand shall allow the Mortgagee to declare the entire unpaid indebtedness due and payable at once.

6. NOTICE: THIS MORTGAGE GIVES THE MORTGAGEE THE OPTION TO ACCELERATE PRINCIPAL UPON ALIENATION OF THE PROPERTY WITHOUT CONSENT, ALL AS PROVIDED HEREIN. In the event the Mortgagor shall sell, convey, alienate, or transfer any interest or be divested of any interest, or the right to any interest, in the lands and hereditaments which are the subject of this mortgage, whether by voluntary acts of the Mortgagor, or by any involuntary means imposed on the Mortgagor or the lands and hereditaments, without the express consent of the Mortgagee first had and obtained, Mortgagee shall have the right, at its option, to declare any indebtedness or obligations secured hereby immediately due and payable in full notwithstanding any maturity date or dates specified in any note or evidence of indebtedness secured hereby.

7. RIGHTS TO INCREASE INTEREST RATE UPON REPEATED LATE PAYMENT. Unless prior written consent of the Mortgagee is obtained to modify the payment terms of the note or notes secured hereby, and in the event the Mortgagor shall pay any three installments in any one calendar year due hereunder more than fifteen (15) days after the same are due, the Mortgagee, at its option, may increase the rate of interest due under the note or notes secured hereby up to the maximum rate of interest per annum allowed by law or 18% per annum.

8. EVENTS OF DEFAULT. The principal indebtedness represented by the note, secured by this mortgage, or the amount from time to time due thereunder for advancements thereon, together with interest, shall become immediately due and payable, although the period limited for the payment thereof shall not have arrived, upon the occurrence of any of the following events:

A. Upon the filing of any Mechanic's Lien against the premises and the failure of the owner thereof to procure, within thirty (30) days after the same is filed, a cancellation of the lien or a discharge thereof, as a lien against the property, in the manner and form provided by law.

B. Should Mortgagor fail to pay the secured indebtedness, or any part thereof, or the periodic deposits for taxes, insurance and other charges as hereinbefore provided when and as the same shall become due and payable.

C. Should any warranty of Mortgagor herein contained or contained in any instrument, document, transfer, conveyance, assignment or agreement given with respect to the secured indebtedness prove untrue or misleading in any material aspect.

D. Should the premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the premises be diminished except as provided for herein.

E. Should any federal or state tax lien be filed of record against Mortgagor or the premises and not be removed by payment or bond within thirty (30) days from date of recording.

F. Should any claim of priority to this Mortgage by title, lien or otherwise be asserted in any legal, administrative or equitable proceeding.

G. Should Mortgagor or any of the guarantors or makers of the Notes secured hereby make any assignment for the benefit of creditors, or any preferential payment or fraudulent transfer pursuant to Florida law, the Federal Bankruptcy Act or other applicable law, or should a receiver, liquidator or trustee of Mortgagor or any of the guarantors or makers or any of Mortgagor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Mortgagor or any of the guarantors or makers, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should Mortgagor or any of the guarantors or makers be adjudicated a bankrupt or insolvent, or should Mortgagor or any of the guarantors, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or if a trust, be terminated or expire.

H. Should Mortgagor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Mortgage, or in the Note, or in any other loan document given with respect to the secured indebtedness.

5

      I.    Should foreclosure proceedings (whether judicial or otherwise) be instituted in any mortgage or junior lien of any kind secured by any portion of the premises.

      J.    Should Mortgagor default in any other loan from Mortgagee to Mortgagor.

      K.    Should Mortgagor obtain any additional financing without the prior written consent of the Mortgagee, such shall constitute a default hereunder.

      L.    Should Mortgagor encumber, sell or otherwise dispose of the mortgaged premises, or any part thereof, without the consent in writing of the Mortgagee.

Upon the occurrence of any of the foregoing contingencies, the Mortgagee shall be absolved from the obligation of making further advancements on account of the Mortgage.

9.    EXCESS ADVANCES.  If the Mortgagee is obliged to expend, for the purposes herein set forth, sums of money which will exceed the amount of the principal agreed to be advanced hereunder, such excess, with interest at the maximum legal contract rate from the time of each advancement, shall be added to the principal due hereunder, and the Mortgagee shall have all the remedies for the collection hereof which are herein specified regarding the principal hereof.

10.    ADDITIONAL RIGHTS OF MORTGAGEE.  Upon the default of the Mortgagor in the performance of the terms and covenants herein contained or should any event occur which entitles the holder of this Mortgage to demand the principal thereof or to refuse any further advancements on account of such principal, the holder of this Mortgage shall be fully and completely entitled, empowered and authorized and is hereby empowered and authorized irrevocably by the Mortgagor without any further consent or authorization, to expend all sums of money which, in its judgment and discretion, shall be reasonably necessary to protect and preserve the mortgaged premises.

To induce the Mortgagee to advance the principal sum secured hereby or any part thereof, and as a prime essential consideration to the Mortgagee, the Mortgagor, hereby constitutes and appoints the Mortgagee, irrevocably, as agent for the purpose of carrying out in every respect the authority herein granted and upon the completion of the improvements, and if Mortgagor is in default under the Mortgage or the promissory note secured hereby, to enter into written or oral contracts in the name of and on behalf of the mortgagor for the renting or hiring of the premises or any part thereof, under such terms and conditions as may seem advisable to the Mortgagee, and to use the rents, issue and profits for the upkeep and maintenance of the premises and for the payment of prior liens and the liquidation of all interest due on mortgages to the Mortgagee and to others at the option of Mortgagee, and for taxes, insurance, water charges, etc., and to apply any surplus to the amount due for principal on the within Mortgage.

11.    APPOINTMENT OF RECEIVER.

      A.    Appointment.  If, at any time in the discretion of Mortgagee, a receivership may be necessary to protect the premises or

the security of the Mortgagee, whether before or after maturity of the indebtedness hereby secured, or at the time of or after the institution of suit to collect such indebtedness or to enforce this Mortgage, Mortgagee shall, as a matter of strict right and regardless of the value of the security for the amounts due hereunder or secured hereby or of the solvency of any party bound for the payment of such indebtedness, have the right to the appointment on ex parte application and without notice to Mortgagor by any court having jurisdiction of, a receiver to take charge of, manage, preserve, protect and operate the premises and any business or businesses located thereon, to collect the rents, issues, profits and income thereof, to make all necessary and needed repairs, to complete the construction of any improvements which have been undertaken but not completed, and to pay all taxes and assessments against the premises and insurance premiums for insurance thereon and after the payment of the expenses of the receivership including reasonable attorney's fees to Mortgagee's attorney, and after compensation for management of the property, to apply the net proceeds in reduction of the indebtedness hereby secured or in such manner as the court shall direct. All such expenses shall be secured by the lien of this Mortgage until paid.

B. Entry and possession. The receiver, or its agent, shall be entitled to enter upon and take possession of any and all of the premises, together with any and all businesses conducted and all business assets used therewith or thereon, or complete construction of improvements, to the same extent and in the same manner as Mortgagor might lawfully do. The receiver personally, or through its agents or attorney, may exclude Mortgagor and its subsidiaries, agents, servants, and employees wholly from the premises and have, hold, use, operate, manage and control the same and each and every part thereof, and in the name of Mortgagor, its subsidiaries, or agents, exercise all of their rights and powers and use all of the then existing items of security and collateral, materials, current supplies, stores and assets and, at the expense of the premises, maintain, restore, complete construction, insure and keep insured, the properties, equipment and apparatus provided or required for use in connection with such business or businesses, and make all such necessary and proper repairs, renewals and replacements and all such useful alternations, additions, betterments and improvements as receiver may deem judicious.

C. Such receivership shall, at the option of Mortgagee, continue until full payment of all sums hereby secured or until title to the property shall have passed by foreclosure sale under this Mortgage.

12. MORTGAGEE'S RIGHTS SEPARATE, DISTINCT AND CUMULATIVE ELECTION OF REMEDIES: The rights of Mortgagee, its successors and assigns, granted and arising under the clauses and covenants contained in this Mortgage or any other loan documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Mortgagee may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under mortgages and preservation of security as provided at law. No act of Mortgagee, its successors or assigns, shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

13. CHANGE OF LAW. In the event of the passage after the date of this mortgage of any law deducting any lien from the value of land for the purpose of taxation, or the changing in any way of the laws now in force for the taxation of mortgages or debts secured by Mortgagor of the manner of collection of any such taxes, so as to affect and lessen the net income on the indebtedness secured by this mortgage, the whole of the principal sum secured by this mortgage, together with the interest thereon, shall, at the option of the Mortgagee, without notice to any party, become immediately due and payable.

14. COUNSEL FEES. The Mortgagors shall pay on demand the counsel fees and expenses of the Mortgagee incurred in any action or proceeding, including appeal, wherein the lien or the amount secured thereby may be affected. Such counsel fees and expenses shall be added to the mortgage debt and secured by all the provisions contained herein.

15. FUTURE ADVANCES. The total amount of indebtedness secured hereby may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed the principal sum of $5,000,000.00, plus interest thereon and any disbursements made for the payment of taxes, levies or insurance on the property covered by the lien of this mortgage, with interest thereon; and this mortgage shall secure any and all additional or further monies which may be advanced by Mortgagee to the Mortgagor after the date hereof, which future advances of money, if made, shall be evidenced by a note or notes executed by the Mortgagor to the Mortgagee bearing such rate of interest and with such maturities as shall be determined from time to time, but any and all such future advances secured by this mortgage shall be made not more than twenty (20) years after the date hereof. Nothing herein contained shall be deemed an obligation on the part of the Mortgagee to make any future advances.

16. COMPLIANCE WITH ENVIRONMENTAL LAWS.

A. Hazardous Waste. Hazardous Waste shall mean and include those elements or compounds which are contained in the list of hazardous substances adopted by the U.S. Environmental Protection Agency (EPA) and the list of toxic pollutants designated by Congress or the EPA or defined by any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability or standards of conduct concerning any hazardous, toxic or dangerous waste, substance or material as now or at any time in effect.

B. Representations and Warranties. Mortgagor specifically represents and warrants that the use and operation of the mortgaged property comply with all applicable environmental laws, rules and regulations, including, without limitation, the Federal Resource Conservation and Recovery Act and the Comprehensive Environmental Response Compensation and Liability Act of 1980 and all amendments and supplements thereto and Mortgagor shall continue to comply therewith at all times. Specifically, and without limiting the generality of the foregoing, there are not now and there shall not in the future be any Hazardous Waste located or stored in, upon or at the mortgage property, and there are not now nor shall there be at any time any releases or discharges from the mortgage property.

C. Indemnification.

1) Mortgagor hereby agrees to indemnify Mortgagee and hold Mortgagee harmless from and against any and all losses, liabilities, including strict liability, damages, injuries, expenses, including attorneys fees for attorney of Mortgagee's choice, costs of any settlement or judgment and claims of any and every kind whatsoever paid, incurred or suffered by, or asserted against, Mortgagee by any person or entity or governmental agency for, with respect to, or as a direct or indirect result of, the presence on or under, or the escape, seepage, leakage, spillage, discharge, emission or release from the mortgaged property of any Hazardous Waste (including, without limitation, any losses, liabilities, including strict liability, damages, injuries, expenses, including attorneys fees for attorney of Mortgagee's choice, costs of any settlement or judgment or claims asserted or arising under the Comprehensive Environmental Response, Compensation and Liability Act, any federal, state or local "superfund" or "superlien" laws, and any and all other statutes, laws, ordinances, codes, rules, regulations, orders or decrees regulating, with respect to or imposing liability, including strict liability, substances or standards of conduct concerning any hazardous waste) regardless of whether within Mortgagor's control.

2) The aforesaid indemnification and hold harmless agreement shall benefit Mortgagee from the date hereof and shall continue notwithstanding payment, release or discharge of this mortgage or the indebtedness, and, without limiting the generality of the foregoing such obligations shall continue for the benefit of Mortgagee and any subsidiary of Mortgagee during and following any possession of the mortgaged property thereby or any ownership of the mortgaged property thereby, whether arising by foreclosure or deed in lieu of foreclosure or otherwise, such indemnification and hold harmless agreement to continue forever.

D. Notice of Environmental Complaint. If Mortgagor shall receive any notice of (i) the happening of any material event involving the spill, release, leak, seepage, discharge or cleanup of any Hazardous Waste on the land or in connection with Mortgagor's operations thereon; or (ii) any complaint, order, citation or material notice with regard to air emissions, water discharges or any other environmental, health or safety matter affecting Mortgagor (an Environmental Complaint) from any person or entity, then Mortgagor immediately shall notify Mortgagee orally and in writing of said notice.

E. Mortgagee's Reserved Rights. In the event of receipt of an Environmental Complaint, Mortgagee shall have the right, but not the obligation (and without limitation of Mortgagee's rights under this mortgage) to enter onto the mortgaged property or to take such other actions as it shall deem necessary or advisable to clean up, remove, resolve or minimize the impact of, or otherwise deal with, any such Hazardous Waste or Environmental complaint following receipt of any notice from any person or entity having jurisdiction asserting the existence of any Hazardous Waste or an Environmental complaint pertaining to the mortgaged property or any part thereof which, if true, could result in an order, suit or other action against Mortgagor and/or which, in Mortgagee's sole opinion, could jeopardize its security under this mortgage. All reasonable costs and expenses incurred by Mortgagee in the exercise of any such rights shall be secured by this mortgage and shall be payable by Mortgagor upon demand.

F. Environmental Audits. If Mortgagee shall have reason to believe that Hazardous Waste has been discharged on the mortgaged property, Mortgagee shall have the right, in its sole discretion, to require Mortgagor to perform periodically to Mortgagee's satisfaction (but not more frequently than annually unless an Environmental Complaint shall be then outstanding) at Mortgagor's expense an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment of: (a) the mortgaged property, (b) hazardous waste management practices and/or (c) Hazardous Waste disposal sites used by Mortgagor. Said audit and/or risk assessment must be by an environmental consultant satisfactory to Mortgagee. Should Mortgagor fail to perform any such environmental audit or risk assessment within thirty (30) days after Mortgagee's request, Mortgagee shall have the right to retain an environmental consultant to perform such environmental audit or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights shall be secured by this mortgage and shall be payable by Mortgagor upon demand.

G. Breach. Any breach of any warranty, representation or agreement contained in this Section shall be an Event of Default and shall entitle Mortgagee to exercise any and all remedies provided in this instrument, or otherwise permitted by law.

17. <u>CONDEMNATION</u>. If all or any part of the mortgaged property, or any interest therein or right accruing thereto, is taken as a result of, or in lieu or in anticipation of, the exercise of the right of condemnation or eminent domain, or by reason of the temporary requisition or the use or occupancy of the mortgaged property, in any event by any government or quasi-governmental authority, civil or military, or any other party entitled to exercise such powers by law, general or special, or is devalued or otherwise adversely affected by any of the foregoing actions, all proceeds payable with respect to any such action are assigned to Mortgagee and shall be paid to Mortgagee. Mortgagee shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. The proceeds of any award or compensation so received shall, at the option of the Mortgagee, either be applied to the payment of the secured indebtedness or be paid over to the Mortgagor for the restoration of any improvement. Mortgagor, immediately upon obtaining knowledge of the institution or threatened institution, of any proceedings for the mortgaged property, or any part thereof, by condemnation or eminent domain, will notify the Mortgagee of the pendency of such proceedings. Mortgagee shall have the right to intervene and participate in any proceedings for and in connection with any taking referred to in this section. Mortgagor shall not enter into any agreement for the taking of the mortgaged property or any part thereof with any person or persons authorized to acquire the same by condemnation or eminent domain, unless the Mortgagee shall have consented thereto in writing. Any of the foregoing actions are sometimes called a "condemnation" or "taking" in this Mortgage and the other Loan Documents. Such proceeds include, without limitation, severance damages, damages arising from the change of grade of any street or the access thereto, the taking of air rights and damages caused by noise, pollutants and other emissions. Notwithstanding any such taking or other injury or decrease in value, or the availability of any proceeds for any of the foregoing, Mortgagor shall continue to pay the Note in the manner required by the

10

Loan Documents. Mortgagee's rights under this paragraph will survive the foreclosure or other enforcement of this Mortgage, and Mortgagee will have the right to receive and retain all proceeds to the extent of any deficiency which exists upon such foreclosure or other enforcement, together with legal interest thereon, reasonable counsel fees, costs and disbursements incurred by Bank in connection with the collection of such proceeds. Such right shall exist whether or not a deficiency judgment shall have been sought or recovered.

18. BINDING EFFECT. This instrument shall inure to the benefit and be binding upon the successors, administrators and assigns of the parties.

19. Whenever used herein the terms "Mortgagor" and "Mortgagee" include all the parties to this instrument and the heirs, legal representatives and assigns of individuals and the successors and assigns of corporations; and the term "Note" includes all the notes herein described if more than one. Whenever used the singular number shall include the plural and the plural the singular, and the use of any gender shall include all genders.

IN WITNESS WHEREOF, the Mortgagor has hereunto set its hand and seal the day and year first above written.

Signed in the Presence of:

Witness #1
Sign: _____
print name
Kevia N. Cohen

Witness #1
Sign: Ann Marie Purpura
print name
Ann Marie Purpura

/s/ James G. Marquez
JAMES G. MARQUEZ

Witness #2
Sign: _____
print name
Kevia N. Cohen

Witness #2
Sign: Ann Marie Purpura
print name
Ann Marie Purpura

/s/ Mariella Marquez
MARIELLA MARQUEZ

STATE OF / CONNECTICUT
COUNTY OF / FAIRFIELD

    The foregoing instrument was acknowledged before me this /27th day of May, 2005, by **JAMES G. MARQUEZ**, who is personally known to me or who produced drivers license as identification, and who did take an oath.

sign / _____
print name
    Notary Public

My Commission Expires:                             (Seal)

**DIANE E. BROWN**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2008


STATE OF / CONNECTICUT
COUNTY OF / FAIRFIELD

    The foregoing instrument was acknowledged before me this /27th day of May, 2005, by **MARIELLA MARQUEZ**, who is personally known to me or who produced drivers license as identification, and who did take an oath.

sign / _____
print name
    Notary Public

My Commission Expires:                             (Seal)

T:\216\216\216\Maraquez\MTG-1.doc

**DIANE E. BROWN**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JUNE 30, 2008

# Exhibit A

Lot 4, BOCA GRANDE ISLES, a Subdivision according to the Plat thereof as recorded in Plat Book 29, Pages 4 through 6, of the Public Records of Lee County, Florida.

Parcel Identification Number: 14-43-20-09-00000.0040