# EXHIBIT
# D

# Profile of Fund



BAYOU FUND LLC



## BAYOU FUND  LLC

*40 Signal Road  Stamford, CT 06902*          *( T )203-324-0333  ( F )203-316-8820*
*E Mail – samisrael@bayougroup.com*

# Profile of Fund

## *WHO WE ARE:*

James G. Marquez and Sam Israel III founded Bayou Fund L.L.C. in June of 1996. The goal of the fund is to provide members with steady, above average market returns while maintaining a lower risk profile than is normally associated with similar strategies. Both principals have had extensive experience in the management of Hedge Funds and Partnerships with both small and large investment organizations. Together they bring to Bayou Fund L.L.C. over 40 years of fundamental analysis, trading skills and portfolio management.

Mr. James G. Marquez, 51, is a native of New Orleans, Louisiana. He is a graduate of the University of Texas, and received his M.B.A. from Tulane University. Mr. Marquez has been a chartered Financial Analyst since 1977.

James began his career in the Trust Division of Citibank, N.A. as an assistant Vice President from 1974 to 1980 where he distinguished himself by managing the Citibank Equity Trust which in 1979 was the top performing bank-managed portfolio in the US with a total return of 57%. In 1980 James took over the responsibility of managing the I.D.S. Progressive Fund, a capital appreciation growth mutual fund, which he guided for two years at which time he was recognized as having the best performing public equity mutual fund in 1982 with a total return of 76%. James next served as Executive Vice President to George Soros in the management of the Quantum Fund, the most successful hedge fund in existence over the past 30 years. James invested his own funds out of the offices of F. J. Graber and Company from 1985 to 1989 at which time he accepted the position as one of the top four General Partners of Steinhardt Management Co., a two billion dollar hedge fund. In 1991, James left Steinhardt Management Co. to form H.M.R. Investors L.P. that he owned and operated until early 1996, at which time he formed Bayou Fund L.L.C. with Mr. Israel.

Mr. Sam Israel III, 40, is also a native of New Orleans, Louisiana where he attended Tulane University. He holds seven NASD licenses and serves as a director on the Introducing Broker Board of the National Futures Association.

Sam began his Wall Street career in 1981 at F. J. Graber and Company a N.Y.S.E. member firm engaged in hedge fund management as well as broker/dealer services. Sam was involved in all phases of the business, from the trading of futures, options and securities to the full compliment of trade processing, record keeping and clearing functions. In 1987 Sam was made a limited partner of the firm. From 1989 to 1990 Sam served as a Vice President at Gerard Klauer Mattison as a Registered Representative at which time he accepted a position as equity trader at A.R.A. L.P. a New York based hedge fund with assets of 90 million dollars until the fund liquidated in late 1990.

Sam then joined Mr. Marquez at H.M.R. Investors L.P. as partner responsible for short term trading for the fund until 1992 at which time he took the position of head trader at Omega Advisors, managed by Leon Cooperman with assets exceeding two billion dollars. Sam was responsible for all equity and financial futures execution, as well as sharing responsibility for hedging the portfolio through the use of futures and options. In 1994, Sam was made a General Partner of the fund. In 1996 Sam formed Bayou Fund L.L.C. with Mr. Marquez.

1.

## *WHAT WE DO:*

Bayou Fund L.L.C. combines both fundamental and technical analysis disciplines to all investment decisions. James G. Marquez employs his considerable experience in fundamental analysis to identify economic trends, group and industry dynamics, then specific undervalued as well as overvalued equities in these groups or industries. Sam Israel III then applies the technical analysis contained in our proprietary trading program as a timing tool for buy and sell decisions. The General Members believe that size will be an inhibiting factor in producing above average returns with commensurate risk control due to the volatility and liquidity profiles of the US equity market going forward. Therefore, it is the intention of the General Members to limit further subscription to the fund once the desired level of 25 million dollars is attained. The General Members anticipate opening a clone domestic fund capped at 25 million dollars and an offshore fund for non-U.S. citizens with a maximum capitalization of 50 million dollars. Total assets under management will not exceed 100 million dollars. Each fund will have similar investment objectives. In order to achieve maximum capital appreciation with essential control of risk, the Fund is not managed for tax consideration. Turnover in the fund tends to be quite heavy in order to take advantage of the volatility which the market experiences on a daily basis. The profiles of the market dictate that in order to properly control risk, short term trading has become a necessity. The General Members does not employ the use of leverage to augment returns. We are desirous of a hedged portfolio each night. The General Members seek above average market returns in an advancing market, and anticipate vast out-performance in a declining market through the implementation of short selling.

The Fund charges no management fee. All expenses incurred in the maintenance and operation of the fund are absorbed through Bayou Securities LLC. with the exception of legal and accounting fees which cannot by law be paid through any other entity. Bayou Fund L.L.C. pays 20% of earned profits annually to the Management Company as an incentive fee, which is assessed upon completion of the annual audit. All incentive fees are subject to high water mark accounting. The funds net asset value must exceed the previous years closing market value, adjusted for expenses and incentive payouts, before any further incentive fee is charged to members.

Bayou Securities LLC. owned and operated by the General Members of the Fund serves as executing broker for institutional clients, as well as Introducing Broker for The Fund. Mr. Marquez and Mr. Israel provide internally generated fundamental and technical research to outside institutional investors, and are paid for their services through the execution of equity orders. It is anticipated that in the near future Bayou Securities LLC. will provide the above mentioned services to in house independent money managers as well. Both Mr. Marquez and Mr. Israel feel that the services provided by Bayou Securities LLC. The additional commissions generated benefit the Fund by way of reduced clearing costs, shared expenses, and validation of ideas internally generated. All trading for the Fund and outside entities are subject to the rules and regulations of the N.Y.S.E. and are allocated by account in strict accordance with exchange rules.

## *HOW WE DO IT:*

The General Members of Bayou Fund L.L.C. have implemented a strictly adhered to investment process in order to achieve maximum return on capital with commensurate risk control. Although the stock market profiles change almost daily, our disciplined approach does not. Each day we assess the market conditions through the use of both our fundamental and technical approach. Well before the market opens, we have scripted and discussed what we believe will be the correct approach to trading that day. Precisely because of our smaller size we are able to take advantage of the volatile rotation in the marketplace experienced on a daily basis, and are able to adjust accordingly.

As previously stated, Mr. Marquez provides fundamental research by way of economic overview, group and industry dynamics, as well as a bottom up and top down analysis of specific companies. Mr. Marquez specializes in Oil and Gas, Industrial Cyclicals, and Technology. We also employ a full time Research Analyst who lives and works in East Texas providing real time in country research analysis in the natural resource area. This analyst is a Ph.D trained geologist with 30 years of experience in this area. His expertise is invaluable as it provides us with the ability to monitor the natural resources industry using a hands on approach. Through the use of printed news and five different news services online, we are able to scan for any news event which can potentially provide us with a trading advantage. We also check daily for any insider activity, SEC filings, industry reports, material changes in filed holdings, and changes in brokerage recommendations on any companies we follow. We, use our proprietary software program to apply our technical analysis in order to fine tune specific buy and sell points for the stocks we choose to trade. This discipline is applied on both a long and short term basis to identify inflection points on a stock by stock basis as well as to identify larger market trends which impact the trading of securities each day. We screen hundreds of stocks daily in order to identify any unusual activity that can signal an upcoming news event, which may positively or negatively affect a specific stock or group.

Each day we try to identify both long and short opportunities in the market in order to keep a balance in our portfolio. During the day we may be up to 100% long or short, but each night we aim to be as balanced as possible which is a primary tool to control risk. We also employ the use of stop loss orders on any securities we trade. Often, we will establish an option position as well as a common stock position with the goal of taking a profit in the common shares offsetting the cost of our option positions. This allows us to stay involved in emerging situations, control risk, and maximize our profits. We employ the use of stops in all option positions as well and adjust our risk profiles in any duplicate stock and option positions. The General Members believe that this measured approach will serve us well in the times ahead, as market volatility continues to migrate to higher levels. Trading and / or exiting positions is the risk management technique employed in order to keep tight control over the risk in the portfolio, which is necessary in the environment we operate in on a daily basis.

# *Bayou Fund, L.L.C.*

## Description

### The Fund

Bayou Fund, L.L.C.
a New York limited liability company (the "Fund")

The Fund is not registered as an investment company under the Investment Company Act of 1940, as amended (the "1940 Act"), and therefore is not required to adhere to certain investment policies under the 1940 Act. The Manager does not presently intend to, but may in the future, register as an investment adviser under the Investment Advisers Act of 1940, as amended (the "Advisers Act"), or any state statute. The Manager is currently registered with the Commodities Futures Trading Commission ("CFTC") and the National Futures Association ("NFA") as a "commodity pool operator" and as a "commodity trading advisor" as those terms are defined by the Commodity Exchange Act, and acts in both such capacities with respect to the Fund currently. However, the Fund currently intends to cease its commodities activities.

### Offering Period

The offering of the interests began in February, 1996 and is extended until December 31, 2000 ("Offering Period").

### The Offering

Maximum Aggregate Capital Commitments:  $25 million

Minimum Aggregate Capital Commitments:  $ 5 million

The Fund is seeking a maximum of $25 million in Capital Commitments through the sale of Interests in the Fund. The Principals (defined below) of the Manager have made aggregate Capital Commitments of at least $200,000.

The minimum subscription to the Fund is $100,000. However, the Manager may accept subscriptions in lesser amounts (but in no event less than $25,000) from Investors who the Manager believes can provide business opportunities or other advantages to the Fund.

Subscriptions may be accepted or rejected by the Manager in its sole and absolute discretion.

10/07/99

4.

**Capital Commitments**

Initial Members were required to make their Capital Contributions in full in cash or in immediately available funds upon fourteen (14) days prior notice of closing. All other Members will be required to make their Capital Contributions in full in cash or immediately available funds upon notice of acceptance of their subscription by the Manager.

The Manager or its Principals have invested not less than $200,000 in the Fund initially, and intend to maintain a minimum investment in the Fund of the lesser of $150,000 (or, if greater, one percent (1%) of the net assets of the Fund) or fifteen percent (15%) of the Fund's net assets. All capital contributions received by the Fund will be received in the Fund's name.

**Portfolio Investments**

The Fund's primary investment objective is to realize capital appreciation while seeking to control risk. There can be no assurance that such objective will be achieved and investment results may vary substantially on a monthly and annual basis.

The Fund utilizes artificial intelligence through proprietary software programs to identify technical patterns. These patterns are mathematically analyzed in an attempt to position the Fund on the "correct" side of the market. The Fund trades both long term and short term opportunities in a global matrix using all financial instruments, indices, securities, and all derivatives thereof. When deemed appropriate by the Manager, the Fund also invests in bonds or other fixed income securities. Additionally, the Fund, when it is deemed appropriate by the Manager, utilizes leverage, short sales, options, and futures and forward contracts (and options thereon) relating to stock indices, financial instruments and other securities, both as independent profit opportunities and to hedge existing long and short positions. While the Fund's trading orientation results in significant open positions on an intra-day basis, the Fund will attempt, to the extent possible given market conditions, to end each trading day with a substantial portion of its portfolio hedged.

**Portfolio Valuation**

The Fund's assets will be valued at least annually by the Manager. The valuations will be subject to audit by the Fund's independent auditor.

**Manager**

Bayou Management LLC. is the Manager of the Fund and, as such, is primarily responsible for the management of the Fund.

**Investors**

Investors in the Fund must be Accredited Investors, Qualified Eligible Participants and must meet other suitability requirements. The Manager, in its discretion, may decline to admit any investor.

**Investment Decisions by the Fund**

The Manager has the exclusive right to make investment decisions on behalf of the Fund, including decisions as to terms, conditions, valuation, type of security and co-investment with others. Further, the Manager has the sole right to determine when, and under what terms, the Fund will sell or realize gains or losses on an investment, including decisions as to type of sale, conversion to other securities, and exercise of warrants and/or options.

The Fund is a trader and investor, but not a dealer, in securities for U.S. income tax purposes. However, the Internal Revenue Service may challenge this position. The consequences of a successful challenge by the IRS could be substantial, depending on the facts and the nature of the Member. Each prospective Member should consult his tax advisor in that regard, as well as all other tax issues relating to an investment in the Fund.

If and when portfolio transactions for the Fund are executed by brokers (other than a broker affiliated with, or related to, the Manager or its Principals) such other brokers will be selected on the basis of best execution.

In view of the fact that the Fund's investment program emphasizes achieving profits from short-term trading, the turnover of the Fund's portfolio is substantially greater than the turnover rates of other types of investment vehicles and, therefore, results in greater commission costs and lower profits or greater losses than might otherwise be the case.

The investment program of the Fund, including the use of leverage, short sales, futures, derivatives and options, involves significant risks. Moreover, the Manager may, at any time, maintain long or short positions involving substantially all of the Fund's assets in anticipation of an increase or decrease in the overall value of worldwide markets. In addition, the Fund has a limited history and the Operating Agreement contains limitations on withdrawals.

**Allocation of Profit and Loss**

Income of the Fund is allocated among the Members (including the Manager and its Principals) pro-rata and credited as follows:

i)      to the Members to whom losses are allocated in the amount of losses previously allocated to them, if any; then

ii)     eighty (80%) percent of the balance to the Members and twenty (20%) percent to the Manager.

Losses are allocated and debited to all Members pro-rata in accordance with their Investment Percentages.

Each Member's "Investment Percentage" will reflect the percentage of the Fund's aggregate Capital represented by that Member's Capital.

**Distributions**

All distributions of income are at the full discretion of the Manager but, if and to the extent made, will be made pro-rata. Any income not distributed will be added to capital as of the first day of the next fiscal period and used to make additional investments.

Distributions to Members may take the form of cash or securities (accounted for at fair value). For purposes of such valuations, the Manager will develop and apply valuation principles (which it may amend from time to time), and which will be reflected in the Fund's audited financial statements.

**Term**

The Fund has a fifteen (15) year term ("Initial Term"). The Initial Term may be extended by the Manager for up to three (3) one (1) year periods after the completion of the Initial Term, if necessary, for orderly liquidation of investments. The Fund may also be terminated earlier than the completion of the Initial Term pursuant to the terms of the Agreement.

10/07/99

**Redemption or Withdrawal**

Any Member may give thirty (30) days' notice in advance on a semi-annual basis that it wishes to withdraw capital. Said advance notice is also required to withdraw profits (in addition to those profits, if any, which the Manager determines to distribute in its discretion). If the Manager or any of the Principals desires to make a withdrawal of either capital or profits, sixty (60) days' notice shall be given to all Members.

Ordinarily, redemptions will be effected by a payment in cash or a distribution of assets equal to ninety (90%) percent of the amount being redeemed. The remaining ten (10%) percent will be paid or distributed within thirty-one (31) days of the next Fund audit. However, if the Manager determines that, in light of the amount of redemptions at any date or other factors it deems relevant in its sole discretion, such a schedule would materially, adversely affect the Fund, it may delay either or both payments by ninety (90) days each.

**Closings**

Subscriptions for Interests may be accepted by the Manager at its sole discretion.

Pursuant to the Agreement, Members admitted after the Initial Closing will participate in investments of the Fund made prior to the date of their admission (but not income or loss accrued prior to such date). The book value of such investments will be adjusted to reflect appreciation or depreciation (or such other adjustment that the Manager may deem more appropriate) up to such date and the newly admitted Member will participate only in appreciation or depreciation and other income or loss occurring after that date from such adjusted book value.

**Fees and Expenses**

The Fund does not pay any annual Management Fee to the Manager. The Fund pays customary transaction expenses, including legal, accounting, investment banking, consulting, brokerage, finder's, custody, transfer, registration, and other similar fees and expenses and the fees and expenses of monitoring major investments, including payments for such services to Affiliates (collectively, "Transaction Expenses"). The Fund is also responsible for any extraordinary expenses, such as valuation expenses, litigation expenses and indemnification payments, the expenses of this and prior offerings up to a combined maximum of $50,000, and any underwriting fees or commissions due in connection with this and prior offerings, as described below. **(SEE "CONFLICTS OF INTEREST AND OTHER ACTIVITIES OF THE MANAGER" BELOW)**

10/07/99

8.

## Expenses

The Manager is responsible for any expenses of all offerings on a cumulative basis that exceed $50,000, except underwriting fees and commissions, as described below, which is borne by the Fund. In addition, the Manager bears all of its normal operating expenses with respect to the administration of the Fund (including costs relating to rent, utilities, office, bookkeeping, preparation of reports, normal accounting, travel and compensation to officers and employees).

## Underwriting Fees and Commissions

There are no sales commission charges on sales of interests to Members. However, the Manager may make payments to third parties for introducing prospective Limited Partners to the Fund; provided, however, that (i) any such third parties must be subject to regulation by the NASD; and (ii) if the Fund makes any such payments, such payments will be charged solely against the capital account of the Manager.

## Borrowing by the Fund

The Fund is allowed to borrow funds, leverage positions and sell short and intends to do so aggressively, given the nature of its investment activities.

## Conflicts of Interest and Other Activities of the Manager

Inherent conflicts of interest arise from the fact that the Manager acts on behalf of the Fund and carries on investment activities (in which the Fund has no interest) for other clients, including individual or institutional discretionary accounts, as well as for Principals or Affiliates of the Manager. Furthermore, Principals or Affiliates of the Manager own and operate a broker/dealer which is the Fund's primary broker.

The Manager or its Principals may organize additional funds or are managing accounts with the same business objective as this Fund. Any such other activity competes with the Fund for investments as well as for the time and attention of the Manager and its Principals.

The Manager, its Principals and other affiliates and associates engage in investment activities unrelated to or apart from the activities relating to the Fund, as well as owning and operating a brokerage firm.

Furthermore, since Principals or affiliates of the Manager own and operate a brokerage firm that the Fund utilizes as its primary broker in executing trades on behalf of the Fund and said Principals are entitled to receive commissions on said trades that may not be at the best possible rates otherwise available to the Fund.

10/07/99

**Auditors and Accountants**

Richmond-Fairfield, CPAs

**Reports to Members**

The Fund has elected a calendar fiscal year. Within ninety (90) days after the end of each year during the Fund's Term, the Fund will distribute tax information to the Members. In addition, the Fund distributes unaudited summary financial information to its Members on a quarterly basis, and on an annual basis distributes audited financial statements prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). In connection with the quarterly or annual reports, it is anticipated that a management letter will be sent to the Members describing important events that occurred since the last report.

**Indemnification**

The Manager and its Members, directors, officers, employees, members, controlling persons, and agents are not liable to the Fund or any Member for any act or omission performed or omitted except for any liability resulting directly from such party's gross negligence or willful misfeasance. The Manager and its directors, officers, employees, members, controlling persons and agents are indemnified by the Fund (but not the Members individually) for any loss, damage, liability or expense arising from or in connection with activities of the Fund unless resulting directly from such party's gross negligence or willful malfeasance.

**Transferability of Interests**

Interests are not assignable or transferable, except by operation of law.

10/07/99

10.

## *Samuel Israel III*

| | |
|---|---|
| **1995 – Present** | **Bayou Fund, LLC**. - A partnership managed as a domestic hedge/trading fund. **Bayou Management, LLC** - manager of the **Bayou Fund**, and separately managed accounts<br>**Bayou Securities, LLC** – a fully registered brokerage firm |
| **1993 – 1994** | **Omega Advisors - Head Trader**<br>Managed assets exceeding 2 billion dollars for Leon Cooperman.<br>Responsible for all equity and financial futures execution for the firm; shared responsibility for hedging the portfolio with financial futures.<br>General Partner of Omega Advisors in January 1994. |
| **3/91 - 12/92** | **HMR Investors, L.P. - Special Limited Partner**<br>a $60m hedge fund managed by James G. Marquez. Responsible for the fund's short-term trading. From June 1992 to December 1992 I operated as a private investor, as well as continuing short term trading for HMR Investors, L.P. |
| **6/90 - 3/91** | **AGA Associates**<br>a money management division of Gruntal & Co., with assets of $100 million. Supervised the firm's equity division and traded both equities and financial futures. |
| **10/89 - 5/90** | **Gerard Klauer Mattison Inc. – Vice President**<br>Supervised the firm's trading accounts. |
| **1/89 - 10/89** | **Midwood Securities – Managing Director**<br>a brokerage concern. Served as institutional A.E. |
| **12/82 - 12/88** | **F. J. Graber & Co., Inc.**<br>a New York Stock Exchange member organization and money management firm geared toward high velocity trading employing highly leveraged techniques and significant portfolio turnover. Responsibilities included coordinating various compliance and regulatory matters related to the purchase and sale of securities and the maintenance of margin accounts. On January 1986 took on the extra sole responsibility for the firm's trading in options and futures on a risk as well as hedged basis. Became a limited partner in January 1987 and undertook the additional responsibility of trading equity securities for the firm. |
| **Education** | **B.A. Tulane University  1982**<br>**Hackley Preparatory School  1978** |

## *James G. Marquez*

| | |
|---|---|
| **1995 - Present** | **Bayou Fund, LLC.** – A partnership managed as a domestic hedge/trading fund. **Bayou Management, LLC.** – manager of the **Bayou Fund** and separately managed discretionary accounts. |
| **1991 – 1995** | **HMR Investors, L.P., - General Partner,** a $60m domestic hedge fund **JGM Management Co., Inc.** – President, manager of separately managed discretionary accounts. |
| **2/89 – 6/90** | **Steinhardt Partners, General Partner** Responsible for 25% of consolidated partnership assets in a hedge fund using long and short equity positions bonds, commodities and currencies. |
| **10/84 – 2/89** | **Private Investor** courtesy of Graber & Co., a firm associated with Weiss, Peck, and Greer, New York. |
| **1/83 – 9/84** | **Soros Fund Management, Executive Vice President** Domestic Equity Manager, Co-International Equity Manager and Portfolio Risk Manager for the Quantum Fund. |
| **4/80 – 12/82** | **Investors Diversified Services, Portfolio Manager of the Progressive Fund** a capital appreciation objective mutual fund. |
| **7/74 – 3/80** | **Citibank, N.A. New York, Portfolio Manager** (Private Banking Division) Managed both growth and income funds. Duties also included policy/strategy oversight for the division as well as the entire Investment Management Group. (I.M.C.) |
| **Education** | **B.A. University of Texas 1971**     English **M.B.A. Tulane University 1974**    Finance, Accounting Chartered Financial Analyst (C.F.A.) 1977 |



# Bayou Fund L.L.C. – Performance – 1999

| Month | Performance | Quarter to Date | Year to Date |
|---|---|---|---|
| January | 1.0% | | 1.0% |
| February | 1.8% | | 2.818% |
| March | 3.4% | 6.314% | 6.314% |
| April | 6.2% | | 12.91% |
| May | 3.5% | | 16.85% |
| June | 2.31% | 12.456% | 19.56% |
| July | 0.8% | | 20.51% |
| August | 2.81% | | 23.89% |
| September | 2.1% | 5.808% | 26.50% |
| October | -1.4% | | 24.73% |
| November | 2.6% | | 27.97% |
| December | 4.26% | 5.47% | 33.42% *audited* |

## Prior Performance

| | | |
|---|---|---|
| 1997 | 40.92% | *audited* |
| 1998 | 22.047% | *audited* |

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS



# Bayou Fund L.L.C. – Performance – 2000

| Month | Gross | Net | Year to Date -Net |
|---|---|---|---|
| January | 4.1% | 3.28% | 3.28% |
| February | <1.4> | <1.1> | 2.144% |
| March | 4.3% | 3.44% | 5.66% |
| April | | | |
| May | | | |
| June | | | |
| July | | | |
| August | | | |
| September | | | |
| October | | | |
| November | | | |
| December | | | |

PAST PERFORMANCE IS NOT NECESSARILY INDICATIVE OF FUTURE RESULTS

# Tremont Advisers, First Boston Plan Hedge-Fund Index

# Wall Street Journal

## November 17, 1999

Bayou Fund, LLC has been included in this Hedge-Fund Index.

By SARA CALIAN
*Staff Reporter of* THE WALL STREET JOURNAL

Tremont Advisers Inc. and Credit Suisse Group's Credit Suisse First Boston Inc. are launching a new hedge-fund index today that underscores the trend toward the institutionalization of the industry.

The new CSFB/Tremont Hedge Fund Index is made up of 284 U.S. and offshore hedge funds, including well-known hedge funds such as George Soros's Quantum Fund and the Tiger Management LLC funds. The index is an asset-weighted benchmark and doesn't include any fund with less than $10 million under management.

Hedge funds, which maverick investors used to dominate, are now growing in popularity among institutions and pension funds. This movement in turn has spurred the hedge-fund industry to move toward more conventional performance-measurement methods.

"It is a maturing era for the hedge-fund industry," says Morten Kielland, a fund manager with Key Asset Management in London, which invests in hedge funds. "There are so many different categories of hedge funds and so many people tracking performance. The pressure on performance statistics and transparency is growing at a rapid rate. This is just the tip of the iceberg as far as institutional investing in hedge funds is concerned."

In the new index, each fund agreed to provide performance and asset data on a monthly basis. The participating funds will be valued and selected on a quarterly basis.

"Each quarter, the index will be reviewed to make sure it matches the shape of the hedge-fund universe," says Nicola Meaden, director of Tremont Advisers in London. "The index will always represent 85% of the assets in the universe."

Robert Sloan, a managing director with Credit Suisse First Boston, says that within six months, CSFB and Tremont will be able to sell products linked to the hedge-fund index.

In addition to the universe index, there will also be nine subindexes for nine specific investment categories, including event driven, equity market neutral, fixed-income arbitrage and long/short equity, global macro, dedicated short bias, managed futures, emerging markets and convertible arbitrage.

Credit Suisse First Boston Tremont Index LLC is the joint-venture company of Credit Suisse First Boston Index Co., a subsidiary of Credit Suisse First Boston, and Tremont Advisers. Tremont Advisers, based in Rye, N.Y., is a holding company that through its subsidiaries is engaged in consulting, information and research and investment products for the global alternative investment industry. Tremont's three hedge funds aren't included in the index, a spokeswoman said.

Bayou Fund, LLC.

Risk Return Analysis
3 Years To December 31, 1999



| | ROR | STDDEV | BETA | ALPHA | RSQR | SHARPE |
|---|---|---|---|---|---|---|
| ● T BILLS-90 DAYS | 4.85 | 0.09 | 0.00 | 0.00 | 0.00 | 0.00 |
| ○ S&P 500 INDEX | 27.57 | 16.52 | 1.00 | 0.00 | 1.00 | 1.37 |
| ■ BAYOU FUND | 28.30 | 20.90 | -0.03 | 23.14 | 0.00 | 1.12 |

Tremont

# NOTES