# EXHIBIT F

Some weeks ago, you popped in for a visit and in a very solicitous manner, wanted to know how I would feel most fulfilled in my work and what areas did I want to pursue. After a great deal of thought, there are only two areas: what I need to do to honor past obligations and what I want to do – which is to build a research business that is separate and distinct from Bayou. Having spent six weeks "across the street", it is clear that we have very little, if anything, in common anymore. None of what has happened has been of my own choosing, but the following is my recommended solution.

I.  Consulting by HMR to Bayou Securities LLC et al.

   A. Bayou Securities is retaining HMR for consulting services on a wide variety of activities including brokerage execution, fundamental and technical research, and customer relations. For those services HMR will be paid a minimum of $150,000 annually.

   B. HMR is being retained as a sub-advisor to Bayou Fund(s) and Bayou Management to provide investment advisory services. HMR contemplates running a very high turnover portfolio that seeks to capitalize on short term price movements. Because of the high turnover, there will be substantial commissions generated which should be understood by all concerned. The following would serve as a pro forma model in making future projections. After a break-in period, HMR is likely to be trading on average 500,000 shares per day at $.06 per share.
   
   500,000 x .06 x 250 trading days = $7,500,000
   - $.02 per share fully allocated cost = 2,500,000
   Net Commissions           $5,000,000
   
   The average share price that HMR trades is $20 to support 500,000 shr/day trading will require the daily use of $5mm, 200% leveraged. HMR contemplates having virtually no overnight exposure. Because of market conditions, holiday periods, etc. it may not be possible to reach the average daily trading levels, so provisions should be made for buffer capital to handle above average compensatory days. As in any business, the future is not knowable. In the course of operating the sub-account, losses may occur net of commissions. What constitutes acceptable/unacceptable levels of principal loss need to be determined before hand. Once the ground rules have been set, there will be very little need for communication between the sub-advisor and Bayou.

   Note: The sub-advisor retains the right to do "away" trades with 3rd party brokers for the purpose of acquiring investment research. A.R.A. trades will not constitute away trades for the purposes of this discussion. (More to follow).

C. M.P.M. Roles.

- To be employed by Securities as a registered rep. At the rate of $70,000 per year, paid monthly.
- Fully paid benefits include health insurance, car lease, and telephone/communications charges.
- Her primary responsibility will be to execute trades with Securities for the sub-advisor, HMR.
- She will have back-up responsibility for execution of Securities customer orders.
- M.P.M. will execute all orders initiated with Bayou for the purpose of paying for investment research created and distributed by HMR.
- M.P.M. will be entitled to 100% of the net commission payout generated from research designated trades.
- M.P.M. will be the executing broker for all family related accounts, and will be entitled to 100% of the net commission payout, including commission received by Bayou from Absolute for account(s) managed there.

D. Investment Research Distributed by HMR.

Henceforth HMR is an acronym for highly motivated research. In the near future, HMR will begin to distribute fundamental investment research. Bayou Securities is not responsible for the content, accuracy, timeliness, or outcome of the research recommendations.

Here, we come to a fork in the road: In the past two years the subject of research generated commission business, research generated salary expense, research generated marketing/travel expense has been a hotly contested topic. Feelings run high on both sides. As I see it, Bayou places little if any value in fundamental research and therefore is strongly opposed to absorbing any expenses associated with generating that research. The best way to disassociate yourself then would be to absorb none of the expenses and none of the profits. If we proceeded on that basis. M.P.M. would receive commissions equal to $.04 per share for every research designated trade, allowing $.02 per share retention for Bayou's fully allocated cost.

I contemplate hiring a research assistant for about $50,000 per year plus health benefits. There will be some travel, entertainment, conferences, etc. My proposal is that these expenses go through Bayou and are deducted from the net commissions to M.P.M.

2

    Technical Research Product – I am prepared to discuss helping in the preparation and distribution of, but I will not initiate.

E. Client Universe – Before commencing the research effort, I would like a complete delineation of the client universe; Bayou captive account(s), Bayou external account(s), HMR research accounts, etc. Should Bayou choose to distribute HMR research to its own client constituency, we would seek compensation on a 50/50 basis for any trades generated.

F. Redefinition of Absolute relationship required: At the present time, it is contemplated that Absolute will distribute/market research prepared by HMR and will split 50/50 commissions generated from research generated trades. VBM Trust commissions paid must be segregated and paid out to M.P.M. Research trade commissions must be designated and segregated to be paid out to M.P.M. The remaining two-way trading commissions between Bayou and Absolute needs further definition. For instance, if HMR, as sub-advisor, trades thru Absolute and A.R.A. participated para-passu the net commissions to Bayou would be $.05 ( twice the 2.5 on the matched trades) versus the $.04 net on trades done thru Bayou. Then there are the random trades you do with Absolute now. Whatever the outcome, the ground rules and the way to keep score need to be determined ahead of time.

G. HMR and /or James Marquez retains full ownership rights to: All Africa Fund, Energy Fund LLC, all research prepared and distributed previously by Bayou; all research prepared and distributed by HMR in the future. Old business revisited: Because things said at one point are later not recalled, I would appreciate you establishing a mechanism and timetable to deal with the $80,000 - $100,,000 loan to Bayou Fund several years ago, and the tax payments for 1999 and 2000 that Dan said he was accruing for. On a smaller and more recent note, I contemplate picking up the research liaison arrangement with V.B.M. I believe Bayou has not paid anything in February and certainly won't in March. Please, calculate the commissions related to that account paid by A.R.A and distribute them to M.P.M. immediately upon the commencement of her employment.

H. Use of facilities: From time to time, HMR may wish to have a research/marketing function at 40 Signal Road. Most likely outside grounds usage with access to the kitchen. HMR will set meeting in strict conformity to Bayou scheduling needs, and as stated earlier, will absorb 100% of the related expenses on a pass-through basis.

I. Ownership issues – To be discussed at a later date.