RICHARD B. FELDMAN (RBF 7243)
**ROSENBERG FELDMAN SMITH, LLP**
551 Fifth Avenue, 24th Floor
New York, NY 10176
Tel:   212-682-3454
Fax:  212-867-9045

*Attorneys for Freestone Low Volitility Partners, L.P.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> DANIEL E. MARINO, <br><br> Defendant. | 05 Cr. 1036 (CM) |
| UNITED STATES OF AMERICA, <br><br> v. <br><br> SAMUEL ISRAEL, III <br><br> Defendant. | 05 Cr. 1039 (CM) |
| UNITED STATES OF AMERICA, <br><br> v. <br><br> JAMES G. MARQUEZ, <br><br> Defendant. | 05 Cr. 1138 (CM) |

**PETITION OF FREESTONE LOW VOLITILITY PARTNERS, L.P. INVESTOR TO MODIFY RESTITUTION ORDER TO INCLUDE FREESTONE LOW VOLITILITY PARTNERS INVESTOR AS A VICTIM OF THE BAYOU FRAUD AND PROVIDE FOR A DISTRIBUTION RESERVE**

Freestone Low Volitility Partners, L.P. ("Freestone"), a former investor of Bayou Accredited Fund, LLC (the "Bayou Hedge Fund"), hereto through their undersigned counsel, Rosenberg Feldman Smith, LLP, respectfully petitions the Court to

modify any restitution order submitted in connection with the sentencing of Daniel E. Marino, Samuel Israel III, and/or James G. Marquez to (a) include Freestone as a victim of the Bayou fraud, and (b) provide for a pro rata distribution reserve, as more fully set forth below. In support of their petition, the Freestone Investor states as follows:

## PRELIMINARY STATEMENT

Freestone is an entity that invested in one of the Bayou Hedge Funds and redeemed all of its principal investment (membership interests in limited liability companies) in accordance with the operative documents governing its interest within two years of the filing of the bankruptcy cases commenced for the Bayou Hedge Fund and its affiliates (collectively, the "Bayou Entities"). Freestone has been named in a lawsuit filed in the name of one or another of the Bayou Hedge Funds, seeking, *inter alia*, return of the principal redemption payment. None of the lawsuits allege that Freestone participated in this fraudulent scheme of the criminal defendants and Freestone contends that it had no knowledge of the fraud. Notwithstanding its innocence, the outcome of the litigation is uncertain.[1]

By this petition, Freestone requests that it be listed as a victim in any proposed restitution order entered in connection with the sentencing of Daniel E. Marino, Samuel Israel III and/or James G. Marquez, and its pro rata share of the Forfeited Assets (defined below) held in reserve pending the outcome of the litigation against it in the

---

[1] The debtors' lawsuits have survived a motion to dismiss based upon *In re Sharp International*, 403 F.3d 43, 54 (2d Cir. 2005), among applicable case law, and a motion for summary judgment on the grounds that there are no real creditors of these Bayou Hedge Funds only equity investors (with, at best, fraud claims subject to subordination to the level of equity under Section 510(b) of the Bankruptcy Code) on whose behalf fraudulent conveyance litigation cannot properly be brought.

bankruptcy case. In that way, in the event that Freestone does not prevail in the litigation and is required to disgorge all or part of its redemption, Freestone will be treated on a par with those investors in the Bayou Hedge Funds that did not redeem, redeemed in part, or have already settled their lawsuits in their bankruptcy cases with the return of some part of their principal investment. The treatment of Freestone in the Bayou Hedge Funds and in the bankruptcy cases warrants equality in connection with the restitution scheme.

As more fully set forth below, tailoring the restitution orders to accommodate Freestone is consistent with the Court's authority under the Mandatory Victim Restitution Act ("MVRA") and the letter and spirit of the MVRA. The request in this petition has precedent in the case law interpreting the MVRA as well.

For the reasons, as more fully described below, the Freestone Defendant respectfully requests that its petition be granted.

## FACTUAL BACKGROUND

### A. The Criminal Actions and Forfeiture Orders

1. Following the collapse of the Bayou Hedge Funds and their affiliates in August 2005, civil and criminal investigations were commenced by state and federal authorities. In particular, the United States Attorney for this District (the "U.S. Attorney"), the Securities and Exchange Commission (the "SEC"), and the Commodity Futures Trading Commission (the "CFTC"), each commenced separate law enforcement actions against the Debtors and their principals – Samuel Israel III ("Israel") and Daniel E. Marino ("Marino") – alleging violations of numerous laws and regulations. On

September 29, 2005, Israel and Marino pleaded guilty before the United States District Court for the District of New York (the "District Court") to conspiracy to commit fraud, mail and wire fraud, and investment advisor fraud. On or about December 14, 2006, James G. Marquez ("Marquez") entered a guilty plea with respect to, among other crimes, charges of conspiracy to commit investment advisor fraud on investors in Bayou Fund, LLC (a predecessor of the Bayou Hedge Fund) and Bayou Fund Ltd.

2. In connection with their guilty pleas, Israel and Marino agreed to forfeit to the United States: (1) $450 million, representing the amount of proceeds obtained by the defendants as a result of mail fraud and conspiracy offenses; and (2) all property, real and personal, obtained from the offenses, including partnership interests and equity investments. The $450 million figure represents the estimated aggregate investments by individuals and entities, including Freestone, in all of the Bayou funds, domestic and offshore.

3. The United States obtained broad forfeiture orders encompassing all property, interests, or assets that would otherwise be assets of the Bayou entities (the "Forfeited Assets"). Among the Forfeited Assets is over $100,727,434 (plus interest) representing Bayou investor funds that had been transferred by the defendants from the Bayou Hedge Funds to an account at Wachovia National Bank and currently held in the Seized Assets Deposit Account. On information and belief, this cash fund is now over $107,000,000. Moreover, on information and belief, there are additional assets that have not been liquidated,

4. On information and belief, the U.S. Attorney has compiled a list of victims of the Bayou fraud for compensation or restitution from the Forfeited Assets in

connection with the sentencing that includes (a) those investors that received no return of their principal investment in the Bayou Hedge Funds and the offshore funds, (b) those investors that received partial redemption of their principal investment from the Bayou Hedge Funds and the offshore funds, and (c) those investors that have returned 50% or more of their principal redemption payments in settlement of the actions against them brought by the Bayou Hedge Funds, described more fully below.  The victims' list, however, does not include the investors that may be forced to return all or part of their principal redemption payments in the bankruptcy litigation.

**B.     The Bankruptcy Cases and the Fraudulent Conveyance Cases**

1. As the Court is aware, there were fraudulent conveyance cases brought against those investors that redeemed their investment (in whole or in part) in the Bayou Hedge Funds within two years of the filing of the bankruptcy petitions.  It is Freestone's position that these lawsuits were designed and pursued through the following scheme by a select group of investors in the Bayou Hedge Funds.  In February 2006, this select group of non-redeeming and partial redeeming investors organized what they called the "Unofficial On-Shore Creditors Committee."  The primary purpose of this committee was to recover their losses by seeking appointment of a receiver of the Bayou Entities with authority to initiate and maintain Chapter 11 cases in order to pursue avoidance claims under the Bankruptcy Code and State law.[2]

---

[2]     Each of the Bayou Hedge Funds was a limited liability company governed by the Delaware Limited Liability Company Act, Delaware Code, title 6, chapter 18, §§ 18-101 – 1109.  To become a Bayou investor, each prospective investing entity or person was sent an operating agreement by one or more of the Bayou Hedge Funds, in substantively identical form.  The Operating Agreements expressly restrict the rights of one member to look to another member for a recovery on any shortfall in a distribution.  Under Section 13.4 of each of the Operating Agreements, once general creditors are paid under dissolution, members who have not received repayment of their capital contributions are barred from bringing any form of claim against other members or former members.  ("If the Company property remaining after the payment or

2.  To that end, the committee filed a civil action with this Court seeking the appointment of Jeff J. Marwil ("Marwil") as sole managing member of the Bayou Entities to marshal and prosecute the avoidance power claims in favor of the defrauded "creditor" community so as to efficiently mitigate their losses. Complaint, *Unofficial On-Shore Creditors' Committee v. Bayou Group, LLC*, 06-cv-2379, subsequently consolidated *In re Bayou*, 06 MDL 1755; see Order of Consolidation entered April 21, 2006.

3.  At hearings before this Court on April 18, 2006 and April 28, 2006, attended by, *inter alia*, the U.S. Attorney (both criminal and civil divisions), the SEC, and the CFTC, the committee advocated for the appointment of Marwil, their hand-picked candidate, as managing member of each of the Bayou Entities to launch the bankruptcy cases for each of the Bayou Entities. Following the April 28, 2006 hearing, this Court entered an Order pursuant to 28 U.S.C. §§ 754 and 959, Federal Rule of Civil Procedure 66, appointing Marwil:

> the sole and exclusive managing member and representative of each of the Bayou Entities with the sole and exclusive power and authority to manage and direct the business and financial affairs of the Bayou Entities, including without limitation, the authority to petition for protection under the Bankruptcy De, 11 U.S.C. §§ 101 *et seq.* (the "Code"), for any and all of the Bayou Entities and in connection therewith be and be deemed a debtor-in-possession for any or all of the Bayou Entities in proceedings under Chapter 11 of the Code, and prosecute such adversary proceedings and other matters as may be permitted under the Code and/or applicable law.

---

discharge of the debts and liabilities of the Company is insufficient to return the Capital Contribution of one or more Members or Economic Interest Owners, such Persons shall have no recourse against any other Member of Economic Interest Owner."). This prohibition, among others in the Operating Agreements as well as other legal impediments to suits by one group of investors against another, may explain the need for a third party to bring the actions on the committee's behalf.

Order § 7(c).

4. Little more than one month later, on May 30, 2006 (the "Petition Date"), Marwil caused the Bayou Entities to file separate petitions for relief under Chapter 11 of the Bankruptcy Code. Under Marwil's control as managing member, the Bayou Entities are currently acting debtors-in-possession pursuant to Bankruptcy Code. §§ 1107 and 1108. The debtors' only business is the pursuit of the litigation described below.

5. The debtors commenced the first four actions (the "Adversary Proceedings") on the Petition Date. Between June 1, 2006 and May 10, 2007, the debtors commenced an additional 115 Adversary Proceedings against similarly-situated investors, for a total of 199 Adversary Proceedings. Finally, the debtors commenced a small additional Adversary Proceedings bring the total to 125 Adversary Proceedings. The complaints, drafted without access to Bayou Hedge Fund documents and little ability to do a meaningful investigation, seek under the authority of 11 U.S.C. §§ 105(a), 502(d), 544(b), 548(a), 550(a), 551 and 1107 of Title 11 of the United States Code (the "Bankruptcy Code") and §§ 273, 274, 275, 276, 276-a and 278 of New York's Debtor and Creditor Law (the "DCL") to avoid and recover alleged fraudulent transfers "so that the funds can be equitably redistributed pro rata to all of the Bayou Entities' creditors.

6. The debtors have settled certain of the Adversary Proceedings. A few Adversary Proceedings have been settled in cases where the investors/defendants have a documented reason for redemption that satisfied the debtors' notion of a good faith defense. One Adversary Proceeding was settled with a complete capitulation by the investor (a family trust) and return of principal and profits in exchange for a claim against

the Forfeited Assets and in the bankruptcy cases. Recently, the debtors settled sixty additional Adversary Proceedings asserted primarily against individual retirees for a return of 50% of the principal redemption payment and 100% of the profits in exchange for the right to make the claim against the Forfeited Assets and a release of their claim in the bankruptcy cases.[3] None of the settlements constitute an admission of liability but, in most instances, reflect litigation fatigue and concern about expense.

## C.  The Basis for the Petition

1.  Based on the available information, which includes proofs of claim filed in the bankruptcy cases and the Bayou records, the debtors estimated that the outstanding liability to the investors in the Bayou Hedge Funds and the offshore funds that have not been sued in the Adversary Proceedings at approximately $280,400,000. The settling investors add an additional $16,633,706 to the amount of investor out-of-pocket losses for a total of $297,033,076. The claims of the remaining investors/defendants that have not settled, including Freestone, add less than $99,000,000 to the victims' claim pool f the debtors were to be completely successful in forcing the return of the entire principal investment of each from each of the remaining investors/defendants.

2.  This petition requests that Freestone be listed as a victim and its pro rata share of the Government Fund be held in reserve pending the outcome of the litigation against it. If Freestone prevails in the litigation, the pro rata share allocated to it can be redistributed among the remaining investor victims. The addition of the investor

---

[3] The release of claims against the bankruptcy estates make it possible for the investors, listed on the victims' list for the Forfeited Assets, to improve their recoveries in the bankruptcy estate and possibly receive more at the end of the day than the settling redeeming investors.

8

defendant to the victims' pool would permit immediate compensation to one set of investors but at the same time, protect the interests of all the defrauded Bayou investors.

      3.    The names and addresses of the remaining investor defendants and the amount of their investments in the Bayou Hedge Funds are known. The information for Freestone, including the minimum amount of its respective losses, is $6,419,016. Its status as victim of the Bayou fraud is undisputed of which $5,777,200 is return of investment and $641,816 payment of profits.

      4.    This petition contemplates that the initial distributions to the Bayou victims would be calculated as a percentage of the losses based upon the aggregate amount of the available liquid assets and approximately $400,000,000 of investor claims. The pro rata distributions allocated to Freestone and other similarly situated investors/defendants would be held pending the outcome of the litigation and redistributed pro rata to other victims on the list if the investor/defendants are successful in their defense of the litigation.

**D.**    **Legal Basis for the Petition**

Courts have addressed similar issues raised by multiple defendants, multiple victims, installment payments and missing victims under the MVRA. In *U.S. v. Muffelman*, 400 F.Supp.2d 368 (D. Mass. 2005), for example, the court crafted a restitution order that listed all of the 326 victims. Since there was no way for the court to distinguish the victims, the restitution order provided for pro rata payments of the restitution monies. *Id*. The order also provided that if a victim cannot be located, that victim's pro rata share shall be distributed among the victims that can be located until

9

those victims received their restitution in full. See also U.S. v. Berardini, 112 F.3d 606 (2d Cir. 1997) (restitution order for identified but not all located victims).

The statute governing the issuance and enforcement of the order of restitution (28 U.S.C. § 3664(d)(5)) that a victim may supplement a claim for losses within 60 days after the discovery of such loss. Moreover, pursuant to the same section of MVRA, the court may set a date, not to exceed 90 days after sentencing, for final determination of a victim's losses if they are not ascertainable by a date that is 10 days prior to the sentencing. The statute also contemplates that defendants may be required to make restitution payments over time, making it possible for the court of structure an order for the purpose of treating victims fairly releasing payments from Forfeited Assets over time.

As set forth in U.S. v. Cheal, 389 F.3d 35, 36 (1st Cir. 2004), the legislative history of MVRA evidences the Congressional intent to provide full restitution to victims of fraud if possible. The provisions governing the procedures for the issuance of the restitution order with final list of victims and amount owed submitted 90 days after the sentencing hearing. In sum, it is premature to close the books on the investor/defendants now.

The unusual circumstances of these cases make a compelling case for structuring a restitution order to provide for the losses of the investor/defendants. For one thing, there are pending bankruptcy cases and Adversary Proceedings in which the intent is to shift the losses suffered by some of the victims onto the other victims. Moreover, actual losses, if any, are likely to be ascertained relatively soon as the

bankruptcy court has put these cases on an accelerate docket. Finally, a full distribution is not possible at this time because there are Forfeited Assets that have not been liquidated. Absent appropriate safeguards, there is a significant possibility that many victimized investors will not be treated with fairness if the Forfeited Assets are distributed without reserving for their losses.

## CONCLUSION

For the reasons stated above, Freestone respectfully requests that the Court grant the petition and such other and further relief as this Court deems just and proper.

Dated:   New York, NY
         October 23, 2007

ROSENBERG FELDMAN SMITH, LLP

By: *[signature]*
Richard B. Feldman (RBF 7243)
551 Fifth Avenue – 24th Floor
New York, NY 10176
Tel:  212-682-3454
Fax:  212-867-9045

*Attorneys for Freestone*