SIMON & PARTNERS LLP
30 ROCKEFELLER PLAZA
FORTY-SECOND FLOOR
NEW YORK, NEW YORK 10112
www.simonlawyers.com

(212) 332-8900

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY
─────────
TERRENCE J. JOHNSON
MARK ELLIS

FAX: (212) 332-8909

COUNSEL
HARRIET TAMEN
JEREMY M. WEINTRAUB
STEPHENIE L. BROWN

November 9, 2007

**By ECF and Federal Express**

Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 640
New York, New York 10007

      Re:    *United States v. Marquez*; 06-cr-1138

Dear Judge McMahon:

      We write in response to the Government's letter dated November 8, 2007 (annexed hereto as Exhibit 1), in which the Government concedes that certain documents attached to its sentencing memorandum purporting to bear the signature of James Marquez were, in fact, forgeries of his signature made by cooperator Dan Marino.

      With regard to several bank signature cards attached to the government's sentencing memorandum as Exhibit A, the Government writes that its "understanding" is that the defense does not dispute that Marino was authorized to sign Marquez's name to "these kinds of documents." The Government is incorrect. Marquez never authorized Marino to sign any Bayou related documents on his behalf. In our October 24, 2007 letter to the government listing the documents with forged signatures, we would not have listed these documents as forgeries if Marino had authorization to sign Marquez's name to them.

      With respect to the March 2003 confirmation letter that was attached as Exhibit O to the Government's sentencing memorandum, the Government admits that Marino signed Marquez's name to that document, but now claims that Marino first obtained Marquez's consent. The absurdity of that claim is demonstrated by the fact that besides the forged letter, the Exhibit includes a photocopy of the envelope and postmark in which the confirmation letter was mailed, meaning that Marino not only forged Jim's signature but also took the added deceitful step of mailing the letter to himself. By doing so, Marino was trying to create a paper trail to prove that Marquez signed the letter, which

**SIMON & PARTNERS LLP**

would have been unnecessary if Marino actually had authority to sign Marquez's name to the letter.

The Government also now claims that it is of no importance that Marquez did not sign the March 2003 confirmation letter (Govt. Ex. O) because whether or not Marquez knew what Marino and Israel were doing after October 10, 2001 is "irrelevant." That claim is belied by the fact that the Government used that exhibit to argue that Marquez's belief that the losses to Bayou's investors had been recouped "does not hold water." Moreover, the relevance of the forged document is that 98% of investor losses occurred after Marquez was no longer with Bayou. Marquez had no knowledge that Marino and Israel had transformed the prior scheme, which consisted of shifting approximately $6 million of investor losses into the future, into a full-fledged $450 million fraud whereby Marino and Israel misappropriated investor funds for their personal benefit.

These issues are further addressed in our reply to the government's sentencing papers which are also being submitted today. We delayed submission of our reply pending receipt of the government's response to the forgery issue, which we received yesterday.

Respectfully submitted,

Bradley D. Simon

cc:    AUSA Margery B. Feinzig (by federal express)