

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PAUL T. WESTERVELT, JR. and | * | CIVIL ACTION |
| PAUL T. WESTERVELT, III | * | NO. 03-0860 |
| | * | |
| VERSUS | * | |
| | * | SECTION "___" |
| BAYOU MANAGEMENT, L.L.C., | * | SECT. C MAG. 1 |
| BAYOU FUNDS, BAYOU SECURITIES, | * | |
| L.L.C., DAN MARINO AND | * | JUDGE _____ |
| SAM ISRAEL, III | * | |
| | * | MAGISTRATE _____ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### COMPLAINT FOR DAMAGES

TO THE HONORABLE JUDGES OF THE UNITED STATES
DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

NOW INTO COURT, through undersigned counsel, come plaintiffs, Paul T. Westervelt, Jr. ("Westervelt") and Paul T. Westervelt, III ("Westervelt III"), and for their complaint against defendants, Bayou Management, L.L.C., Bayou Securities, L.L.C., Bayou Funds (collectively "Bayou"), Sam Israel, III and Dan Marino allege upon information and belief as follows:

1



## JURISDICTION AND VENUE

### I.

Plaintiffs, Westervelt and Westervelt III, are individuals of the full age of majority domiciled at all relevant times in St. Tammany Parish, Louisiana, within this judicial district.

### II.

Defendants Bayou Management, L.L.C., Bayou Securities, L.L.C. and Bayou Funds are limited liability companies and/or other legal entities organized and existing under the laws of states other than Louisiana, with their principal places of business in Stamford, Connecticut.

### III.

Defendant Dan Marino is an individual of the full age of majority residing and domiciled in the State of Connecticut.

### IV.

Defendant Sam Israel, III is an individual of the full age of majority domiciled and residing in the State of Connecticut.

### V.

Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. §1332, in that complete diversity of citizenship exists between all plaintiffs and all defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## VI.

Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) and (3), in that a substantial part of the events giving rise to this claim occurred in this district, and all of the defendants are subject to personal jurisdiction in this jurisdiction.

## THE PREMISES
## VII.

Plaintiff Paul T. Westervelt, Jr. had for 33 years been engaged in the business of investment management, investment counseling and fund management in and around the City of New Orleans and had established an excellent reputation, both personally and professionally, as being very successful in those fields, with particular expertise in hedge fund management. As a consequence, Westervelt had provided a wide variety of investment and fund management services, for which he was justifiably well-compensated.

## VIII.

In the Summer of 2002, defendant Israel, who was originally from New Orleans and who has known Westervelt for many years, approached Westervelt, individually and on behalf of Bayou, for the purpose of discussing a business arrangement whereby Westervelt would leave his employer, Johnson Rice and Company of New Orleans, and other enterprises, to join forces with Israel, Marino and Bayou. Over several months of negotiations, Israel, individually and as a principal of Bayou, along with Marino, individually and as an officer of Bayou, actively recruited Westervelt to become a principal

and shareholder in Bayou, proposing that Westervelt open a money management office for Bayou in Covington, Louisiana, and also assist Bayou in establishing brokerage offices in New Orleans and North Carolina. Over the course of several months, Israel and Marino, individually and as principals of Bayou, made numerous representations about themselves and Bayou in an effort to portray Bayou as a successful and reputable investment/fund management business and recruit Westervelt to leave his very successful existing business arrangement with Johnson Rice to join Bayou.

### IX.

In September 2002, Westervelt, based on the representations made and the image of Bayou created by Israel and Marino, individually and as representatives of Bayou, agreed to leave his successful business arrangement with Johnson Rice and join Israel, Marino and Bayou. Westervelt agreed to contribute his expertise and experience in investment and fund management. In exchange, Bayou agreed to pay Westervelt $800,000.00 per year through October 31, 2007, and convey to him an immediate 25% ownership interest in Bayou Management, L.L.C., to be formally documented no later than December 31, 2002, with the prospect of increasing that ownership interest over time to 33%. The agreement was documented by letters of intent dated September 30, 2002, which were signed by Israel and Marino, for themselves and as principals of Bayou. (See Exhibit "A," in globo).

### X.

As a further term of the agreement between Bayou and Westervelt, Bayou agreed to employ Westervelt, III as an assistant to Westervelt at an annual salary of $90,000.00 for five years, through October 31, 2007, plus annual bonus to be determined. (See Exhibit "A"). Westervelt, III specifically claims entitlement to the benefits of that agreement as a third-party beneficiary pursuant to arts. 1978 *et. seq.* of the Louisiana Civ. Code.

### XI.

Following confection of the agreement of September 30, 2002, Bayou Management paid Westervelt and Westervelt, III the salaries contemplated in that agreement, thus ratifying the validity of the September 30, 2002 agreement.

### XII.

However, in other material respects, Bayou, through its principals, Israel and Marino, failed to comply with the agreements and promises made with and to Westervelt. In particular, although Israel and Marino described Westervelt as a partner (see Exhibit "A"), and recognized him as such, they failed to provide him access to, and actively prevented him from obtaining, critical business documents and financial information relating to Bayou, to which Westervelt was entitled and which he needed to conduct his business and protect his business interests and reputation. The failure of Bayou, through Israel and Marino, to provide Westervelt the necessary documents and information severely impaired his ability

to conduct the business in which he was engaged and for which he was recruited by Bayou, and caused Westervelt severe mental anguish and emotional distress.

### XIII.

Additionally, Westervelt, upon entering into the business arrangement with Bayou and its principals, Israel and Marino, discovered what he perceived to be possible violations of S.E.C. regulations governing the operation of hedge funds, as well as other perceived possible violations of S.E.C. and N.A.S.D. rules and regulations. In addition, Westervelt became concerned that Bayou, Israel and Marino might intend to use the North Carolina brokerage office for a purpose that he believed was improper and unethical and would be detrimental to Bayou's investors. Westervelt requested, but was unable to obtain, information and records necessary to evaluate these matters. These problems with Bayou, combined with the lack of access to records and information, concerned Westervelt, as a principal in Bayou, that he might have duties to investors, co-workers and regulatory bodies, and that he might be exposed to criminal charges, professional censure, and civil liability, as well as damage to his business relationships and his professional and personal reputation.

### XIV.

Westervelt was, understandably, extremely concerned about these matters, and he refused to be involved in any inappropriate, illegal, unethical and/or improper activities if such were occurring or contemplated. Westervelt realized that his concerns relating to

possible rules violations and illegal activity were not being addressed and, in all probability, would not be addressed.

## XV.

In addition, Westervelt, through frequent visits to Bayou's principal office in Connecticut, observed Marino engaged in conduct toward the other employees of Bayou on numerous occasions that Westervelt believed was not only potentially damaging to his ownership interest in Bayou, but might also expose Bayou, and therefore Westervelt's interest, to potential civil liability.

## XVI.

Although he needed, requested and was entitled to financial documentation relating to Bayou, including income statements, balance sheets, monthly account statements and other financial documents evidencing the ongoing business activities of Bayou, Marino and Israel, individually and as principals of Bayou, repeatedly and deliberately obstructed Westervelt's access to those documents and information, thereby denying Westervelt critical information concerning the business interest for which Israel, Marino and Bayou had recruited him. In short, they had recruited him into a business, for which he gave up a very successful existing business arrangement, and thereafter actively prevented him from knowing what the business was doing from a financial standpoint.

## XVII.

Nevertheless, Westervelt was able to obtain some documentation, from which he learned that Bayou's capital trading account at Spear, Leeds & Kellogg ("Spear Leeds"), had been depleted by more than $7 million in December 2002. As evidenced by the December 2002 account statement (Exhibit "B"), Bayou's capital account at Spear Leeds had a balance of more than $7.8 million on December 1, 2002, and a balance of only $379,000 as of December 31, 2002. (Exhibit "B"). The activity included a withdrawal of $4.2 million on December 26, 2002 for which he could obtain no explanation. (Id.). Although Westervelt repeatedly asked Israel and Marino to explain the depletion of Bayou's capital account in December 2002, he never received any explanation, nor was he provided any subsequent account statements demonstrating further activity in that account.

## XVIII.

Additionally, although the September 30, 2002 agreement between Westervelt and Bayou, Israel and Marino granted Westervelt an immediate 25% interest in Bayou Management, L.L.C., to be documented no later than December 31, 2002 (Exhibit "A"), Bayou, Israel and Marino failed to execute the documents formally conveying that interest to Westervelt as of that date, and have never executed the documents formally conveying to Westervelt the 25% interest in Bayou Management, L.L.C. to which he is entitled.

### XIX.

In an effort to resolve what Westervelt perceived to be very significant problems with Bayou, which potentially exposed Westervelt personally to possible professional censure and civil liability as well as threatened considerable damage to his business relations and reputation, Westervelt expressed his concerns in a letter to Israel dated March 9, 2003. (See Exhibit "C"). In response, and in retaliation for requesting information and refusing to engage in any illegal, improper, unethical, or detrimental conduct, Bayou, Israel and Marino terminated Westervelt's contract on March 17, 2003. Bayou also terminated Westervelt, III's employment.

### XX.

At all times, Westervelt and Westervelt, III acted in good faith and performed the obligations they undertook fully and professionally.

### FIRST CAUSE OF ACTION
### XXI.

Based on the foregoing premises, the defendants, individually and *in solido,* are liable to Westervelt and Westervelt, III (as third-party beneficiary) for breach of contract under Louisiana law. The Westervelts seek all damages to which they are entitled by law, including full payment of all remaining compensation owed under the September 30, 2002 agreement ($800,000.00 per year through October 31, 2007 for Westervelt and $90,000.00

per year through October 31, 2007 for Westervelt, III), plus the value of Westervelt's 25% interest in Bayou Management, L.L.C.

### SECOND CAUSE OF ACTION
### XXII.

In addition, Westervelt endured considerable and extreme emotional distress as a result of the defendants' misconduct and misrepresentations in recruiting Westervelt, their treatment of Westervelt after he joined Bayou, and their unjustified termination of the Westervelts on or about March 17, 2003. Moreover, the defendants' misconduct caused significant potential damage to Westervelt's business relationships and his personal and professional reputation. These defendants' conduct also caused Westervelt, III severe mental anguish and emotional distress.

### XXIII.

As a result of the foregoing, the Westervelts are entitled to all damages allowed by law for mental anguish, emotional distress, damage to reputation, damage to business relations, and other such elements of damages to which the Westervelts are justly and truly entitled by law, and as will be proven at trial.

### THIRD CAUSE OF ACTION
### XXIV.

The defendants' actions in terminating the Westervelts' contract constituted an unlawful violation of the Louisiana "Whistleblower Statute," L.S.A.-R.S. 23:967.

Westervelt at all times acted in good faith in refusing to engage in unlawful practices that potentially exposed Bayou, and Westervelt as a principal, to criminal sanctions, professional censure, civil liability, as well as damage to his business relations and personal and professional reputation. The defendants' violation of L.S.A.-R.S. 23:967 entitles the Westervelts to all compensatory damages, back pay, and benefits, and also to reasonable attorneys' fees and all court costs as a matter of Louisiana law.

## CONCLUSION
### XXV.

As a result of the foregoing, plaintiffs are entitled to judgment against defendants, individually and *in solido*, for all damages to which plaintiffs are entitled by law, and as will be proven at trial, as well as attorneys' fees, interest and costs.

### XXVI.

Plaintiffs reserve the right to supplement and amend this Complaint for Damages as additional information becomes available, and plaintiffs, in bringing this complaint and alleging the foregoing causes of action, in no way waive or limit their right to assert other causes of action as may be appropriate in the future.

**WHEREFORE**, considering the foregoing premises, plaintiffs, Paul T. Westervelt, Jr. and Paul T. Westervelt, III, pray for the following relief:

1. That defendants, Bayou Funds, Bayou Management, L.L.C., Bayou Securities, L.L.C., Sam Israel, III and Dan Marino, be summoned to answer, all and singular, the foregoing allegations;

2. That after due proceedings, judgment be entered in favor of the plaintiffs and against the defendants, *in solido*, for all damages to which the plaintiffs are entitled by law, including, but not limited to, the compensation to which they were entitled under the September 30, 2002 agreement through October 31, 2007, the value of Paul T. Westervelt, Jr.'s 25% interest in Bayou Management, L.L.C., compensatory damages for mental anguish, emotional distress, damage to reputation, and damage to business relations, back pay, forward pay, loss of benefits, and all other damages to which the plaintiffs are entitled by law, as will be proven at trial;

3. That judgment also be entered in favor of the plaintiffs and against the defendants, *in solido*, for all reasonable attorneys' fees and costs incurred by the plaintiffs, as well as legal interest on all sums awarded;

4. That plaintiffs be granted all other relief to which they are entitled.

Respectfully submitted,

MURPHY, ROGERS & SLOSS

*[signature]*

Gary J. Gambel, T.A. (#19864)
Peter B. Sloss (#17142)
701 Poydras St., Suite 400
New Orleans, LA 70130
Tele: 504.523.0400
Fax: 504.523.5744
*Attorneys for Paul T. Westervelt, Jr. and Paul T. Westervelt, III*

**PLEASE ISSUE SUMMONS FOR:**

**Bayou Management, L.L.C.**
40 Signal Road
Stamford, CT 06902

**Bayou Securities, L.L.C.**
40 Signal Road
Stamford, CT 06902

**Bayou Funds**
40 Signal Road
Stamford, CT 06902

**Sam Israel, III**
40 Signal Road
Stamford, CT 06902

**Dan Marino**
40 Signal Road
Stamford, CT 06902

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**