# SIMON & PARTNERS LLP

30 ROCKEFELLER PLAZA
FORTY-SECOND FLOOR
NEW YORK, NEW YORK 10112
www.simonlawyers.com

(212) 332-8900

BRADLEY D. SIMON
BRIAN D. WALLER
KENNETH C. MURPHY

TERRENCE J. JOHNSON
MARK ELLIS

COUNSEL
PAMELA B. STUART
HARRIET TAMEN
JEREMY M. WEINTRAUB
STEPHENIE L. BROWN

FAX: (212) 332-8909

NEW YORK
WASHINGTON, D.C.
PARIS

January 18, 2008

**Via Hand and Facsimile (212) 805-6326**

Honorable Colleen McMahon
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 640
New York, New York 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/23/08
```

Re:   *United States v. Marquez*; 06-cr-1138

Dear Judge McMahon:

  We represent defendant James Marquez ("Marquez") in the above matter. In connection with Marquez's sentencing, we submitted a Sentencing Memorandum on or about September 12, 2007. The Government submitted its Memorandum in Connection with Sentencing on or about October 16, 2007. We submitted a Reply Memorandum on or about November 9, 2007. The Reply Memorandum focused on certain facts raised in the Government's Memorandum that we disputed. To resolve those disputed facts, the Court ordered a *Fatico* hearing. We have conferred with the Government and have come to an agreement regarding the facts set forth below, which both parties believe resolves the factual disputes and obviates the need for a *Fatico* hearing.

  In or about 1995, Samuel Israel III ("Israel") and a colleague discussed opening a hedge fund called the Bayou Fund (the "Fund"). Although that colleague dropped out, Israel planned and executed necessary legal documentation for opening such a hedge fund. Israel then offered Marquez the opportunity to join him. Marquez agreed and they began recruiting investors and making investments in or about 1996. The Fund initially operated out of Israel's basement with approximately $1 million in investor contributions.

  In March 1996, the Marquez Family Foundation, a charitable foundation that makes no distributions to Marquez or his family, invested $120,000 in the Fund. Marquez's wife contributed $31,000 that was used to satisfy NASD capital requirements for Bayou Securities, a broker-dealer also formed by Israel through which the Fund executed its trades. The investment made by the Marquez Family Foundation was redeemed later in 1996 along with a profit of $27,835. In August 1997, the J.G. Marquez Family Trust, a trust which benefits Marquez's children, invested $100,000 in the Fund, the entire investment of which was redeemed in 2001. In addition, Bayou distributed false profits on

SIMON & PARTNERS LLP

that investment of $82,815 and $19,330 to the J.G. Marquez Family Trust in March 2001 and April 2002, respectively.

In March 1996, Israel invested $150,000 in the Fund. At that same time, Israel invested $90,000 on behalf of his children.

Marquez functioned below Israel in Bayou's hierarchy and is not named on Bayou's corporate formation documents. Nevertheless, he held himself out as a partner and principal of Bayou. In meetings with potential and actual investors and in marketing materials distributed to potential and actual investors, Israel and Marquez indicated that they were the founders and principals of Bayou. Marquez participated in the creation of Bayou's marketing materials, which were distributed with his knowledge and consent. Marquez held himself out as a partner to Bayou's employees, although most employees were aware that Marquez operated underneath Israel. From approximately 1996 through December, 2001, Israel and Marquez received generally the same distributions from Bayou. While Marquez was a signator on Bayou accounts from 1996 through the end of 2000, he never issued any checks. Finally, in three letters from Marquez to Israel in early 2001, Marquez indicated that he expected to be compensated for his carried/ownership interest in Bayou.

Marquez's primary responsibilities at Bayou were trading stocks, portfolio management, researching stocks, writing a newsletter entitled "View from the Bayou," and issuing other written stock recommendations. Marquez had only limited involvement in Bayou's administrative matters. Marquez wrote letters to, called, and met with potential investors soliciting their investments. The Government has indicated that out of the 31 investors apart from the Marquez and Israel families who invested from 1996 until December 31, 2000, it contacted seventeen and seven indicated that they had met with Marquez prior to investing in Bayou.

The Government has objected to our categorization of certain documents contained in exhibits A and B of its sentencing memorandum as "forgeries." After reviewing these documents and further discussing the issue with the Government, we agree to withdraw our categorization of these particular documents as forgeries.

By way of background, the defense first raised the issue of the authenticity of Marquez's signature on a 2003 confirmation letter attached as Exhibit O. The Government in its letter to Your Honor dated November 8, 2007 withdrew Exhibit O from the Court's consideration. Thereafter, in our reply brief, we indicated that there were other documents contained in Government Exhibits A and B bearing the signature "James Marquez" which were also not, in actuality, signed by him. The documents in question contained in Exhibit A are the Citibank N.A. Facsimile/Telephone Funds Transfer Agreement and a Spear Leads trading authorization. While these documents were not signed by Marquez and he has no recollection of ever seeing them, we agree to withdraw the categorization of these documents as forgeries since Marquez did execute certain Citibank banking agreements and signature cards, also attached as part of the Government's Exhibit A.

Similarly, with respect to the March 20, 1996 Sunpoint Securities letter, contained in the Government's Exhibit B, page 1, we withdraw our categorization of that document as

**SIMON & PARTNERS LLP**

a forgery. While again, Marquez did not sign this letter and has no recollection of ever seeing it, the Government correctly points out that as the letter anticipates, within approximately one month after the date of the letter Marquez subsequently met with Sunpoint personnel and others in a meeting in Florida in order to recruit Sunpoint to invest in Bayou. His efforts were unsuccessful as Sunpoint never invested in Bayou.

Throughout his tenure at Bayou, Marquez remained a general partner of HMR, a private partnership that he formed in 1991. In our reply brief, we stated that one reason that Marquez was not financially dependent upon Bayou was that HMR traded brokerage accounts of outside investors through Bayou Securities, which generated commissions to Bayou in excess of $1 million. We wish to modify that statement since we have subsequently learned that HMR did not conduct trades for outside investors from 1996 through 2000. During that time period, HMR did trade on behalf of Marquez and his wife. Those trades were executed through Bayou Securities at cost, which did not result in profits to Bayou. In 2001, however, HMR provided written research reports to outside clients, who sometimes executed trades based upon that research through Bayou Securities. In this manner, HMR indirectly generated commissions paid to Bayou. Thus, in 2001, although Bayou paid monthly consulting fees to Marquez and paid for certain expenses incurred by Marquez and HMR, those payments from Bayou were offset by the commissions generated both directly and indirectly by HMR to Bayou.

Marquez suffered from bipolar disorder throughout his tenure at Bayou. There is a disagreement as to the extent that his mental illness impacted upon his conduct, and the Court is respectfully referred to the previously submitted sentencing memorandum and psychiatric reports.

Since our last appearance before Your Honor on November 15th 2007, the Government and defense have expended considerable time and effort working to resolve outstanding issues. Accordingly, Marquez has decided to withdraw his opposition to the Government's argument for an abuse of trust enhancement. We recognize the Court's discretion in imposing sentence regardless of such an enhancement.

The Government and the defense believe that the undisputed facts set forth above substantially resolve all disputed factual issues. We are prepared to proceed to sentencing on January 22, 2008.

Respectfully submitted,

Bradley D. Simon

cc: AUSA Margery B. Feinzig (by e-mail and fax 914-682-3392)